1520086 WBCMT 2007 C33 Office 9720 LLC v NNN Realty Advises Mr. Bernarski, where's this property located? Thank you, Your Honor. May it please the Court? Yes. This property is located in Harris County. Well, I know that. I'm from Houston. That's why I'm a little more precise. Actually, the truth of the matter is I don't know where it is. You don't know. Sorry to disappoint you. That's okay. This case is about the enforceability of a guarantee, where the central issue is the definition of borrower. Now, there are two orders on appeal here. One is the denial of the summary judgment, and the other is the final order, which declined to enforce the guarantee after a bench trial. And at the conclusion of the bench trial, the trial court stated that there is no question what the bank intended with this guarantee, meaning that the bank intended for this guarantee to be enforceable under these circumstances. However, the court declined to enforce that guarantee because of what it determined to be ambiguities in the definition of borrower. So there are two questions here today. Number one, does this guarantee incorporate the definition of borrower from the security instrument? And number two, does it matter? Is it enforceable, notwithstanding the answer to that question? So to understand why that's important, we have to look at the loan transaction itself. This was a $17.5 million loan in a tenant-in-common structure, which meant that up to 35 investors could buy undivided interest in the property and become subject to the financing of that property through these loan documents. It was also intended to be sold on the CMBS market, meaning it was a commercial mortgage-backed security that lender investors could buy. And the testimony at trial was that in that market, these loans have to function substantially similar. The terms have to be substantially similar. There's not a mechanism for individual underwriting of each loan on this market. They're pooled together and bought as a pool. Why is this, I mean, just to enlighten me, why is this form of organization being used in place of a joint venture arrangement or a limited partnership with these individual LLCs being limited partners? I think the structure that's used here enhances the marketability of the loan package as part of a group where they're all of similar type of commercial properties. I'm informed that this type of structure enhances the marketability. It somehow is more of a lower risk of the payment stream coming through to— Only if you can go after each of the LLCs. Certainly, certainly. And that's a major question. So the security instrument was the deed of trust, which described the remedies that the lender would have in the event of certain defaults. And that instrument had a very broad definition of the borrower. In the security instrument, the borrower is not only defined as the initial borrower, the corporate entity of NNN Cyprus would drive. It included the first 20 TIC entities, the tenant and common entities, 1 through 20. And it also said that that is the definition together with the initial borrower and each co-owner transferee as hereinafter defined, acquiring an interest in the property, as hereinafter defined, in accordance with the terms hereof, individually or collectively, as the context may require. The security instrument further enhanced that definition in Section 6.8 when it said that words in the singular shall be held and construed to be— unless the context otherwise requires. And finally, in Section 6.36, the security instrument states that where the term borrower is used, such terms shall be read to include each entity comprising borrower and the representation, covenant, condition, requirement, or provision relating thereto shall be applicable to each entity comprising borrower. So the question is whether that definition was properly incorporated into the guarantee. And to look at the guarantee language, which says in substance that the definition of borrower under the guarantee includes the initial borrower, as it does under the security instrument. It includes the first 20 TIC entities, as it does under the security instrument. And then it says, each a Delaware limited liability company, open paren, as defined in the security instrument, closed paren, the borrower, closed paren. So there's a stray parenthesis there. The district court found that the stray parenthesis was a grounds for finding ambiguity. And the reason is, is because it could not determine whether that definition as defined in the security instrument, whether it modified Delaware limited liability or something else or nothing at all. It couldn't determine, based on the way it was stated, what that was referring to. And to rely on a stray parenthetical to determine ambiguity was reversible error. It is the words, not the punctuation, that are the controlling guide in construing a contract. And with regard to typographical errors, written contracts are construed according to the party's intention, notwithstanding the errors. When the meaning is clear, a court should interpret the contract according to their meaning without regard to punctuation marks or a want for them. What are you citing from? I'm citing from the Anderson case, Anderson and Kerr drilling versus Brewmeyer. Brewmeyer, that's a Texas case, Texas Supreme Court case. There's also the Madison versus W.F. Larson case, which is a civil court of appeals of Amarillo case. Why are you arguing that the indemnity in the very next paragraph, whereas the loan is evidenced by a promissory note and is secured by a deed of trust, a security agreement and fixture filing, blah, blah, blah, from borrower for the benefit of lender, you know, it's, in other words, it clearly is referring to, in fact, it calls them at the end of the paragraph, the loan documents. Indeed. Indeed. And how can you have the guarantee being inconsistent with the loan documents just as a matter of normal interpretation of collective documentation of loans? Indeed. And we have argued in our brief that these documents need to be construed together so that they are consistent. Definition in one should be consistent with definition in the other, assuming that is the intent that can be discerned from that document. And we contend that notwithstanding the straight parenthetical, it is the definition that was intended. That is what the reference is there to provide. My other question has to do with this associated document that you sent to the court, which was called SEC Indemnity and Guarantee Agreement, and it appears that the only difference between that and the one that is in your record excerpt actually lies in the definition of borrower. That's right, Your Honor. So what's going on? That document, yes, inside of that parenthetical includes the words together with each co-owner transferee, and then it goes on the same. And they're both executed? They're both executed. So how come you never pointed that out to the district court, or did you? We did not. The SEC Indemnity was not a document that was at issue. There was no triggering event. Well, what's the difference between it and the Indemnity? Well, the SEC Indemnity covers violations of securities law, which would give rise to liability by the guarantor. But that was not an issue in this case. Where does it say that? I mean, because, frankly, my understanding is that the only, absolutely only difference between the SEC Indemnity and this other indemnity is the term SEC and the definition of borrower. Your Honor, under Paragraph 1 in the SEC Indemnity, it covers the conditions for liability, and it defines a term securities liability arising from the rescission in favor of any borrower arising from or related to a certain investigation by the SEC captured in the matter of Triple Net Properties LLC. So it references a specific action by the SEC and is meant to capture liability in the event of a certain condition related to securities. Well, why would you, I mean, why would anyone execute an entirely separate document about that? I believe, Your Honor, in this case there was a special circumstance which gave rise to the need to file this. There was no evidence on that. We did not believe there was any condition that was violated under this document. But the Court's question about how the definition of borrower in the SEC Indemnity informs our guarantee that's at issue in this case is the only difference is it includes the phrase, together with each co-owner transferee. And I see three possibilities for how this might inform the definition and guarantee. Number one is that phrase, together with each co-owner transferee, was meant to be included in the guarantee but wasn't. Or the phrase, as defined in the security instrument, was meant to be deleted from the guarantee but wasn't. Or the third possibility is it really doesn't inform it at all. These two documents stand on their own in terms of what they intended to define. That's a little bit nonsensical, I have to concede, because there's no reason to exclude co-owner transferees, future co-owner transferees, from that definition. And, in fact, there is a provision in both these indentities, both in these guarantees, which contemplates future transfers to co-owner transferees. And it says that the guarantor would ratify the terms of the guarantee each time there was a new co-owner transferee. And that's in both provisions. And that's another reason why the guarantee is enforceable on its own terms, regardless of how the incorporation argument goes. So whether there was intent to place it inside the parenthetical or not, it's a matter of interpretation. But what the Texas Supreme Court has said is that courts can neither rewrite the party's contract nor add to its language. There was a case out of this Court called Sharp v. State Farm Fire and Casualty Insurance Companies, decided in 1997, concerning the interpretation of insurance contracts, where the policy owner argued that a prior version of an insurance policy should inform the interpretation of a current version and asked the Court to essentially rewrite the current version. And this Court rejected that approach because the policy in front of them was unambiguous and, therefore, extrinsic evidence could not be used to create ambiguity. For the same reasons, we believe this guarantee is unambiguous. There is only one interpretation of what the parties intended by that incorporation, was that they meant to have the same definition of borrower across all the loan documents. Well, part of their argument is that this is supposed to be a limited guarantee. And, indeed, it is. Why is it limited? Well, it doesn't cover every condition that's conceivably out there for borrower conduct. It's limited to certain circumstances. Well, one of which is failure to repay the loan, so I'm not quite sure. I mean, it includes all sorts of errors in management of the property. It's a — to call it limited is merely a characterization. The guarantee terms themselves define what the scope of it is, not their subjective belief that it's a limited guarantee. It does cover a laundry list of conditions, but certainly not every conceivable one. So in that matter, maybe it is limited, maybe it's a broad one. But it is what it is, and it's meant to be interpreted under its own terms. Partly why I was confused about that other guarantee is it specifically says it covers borrower's failure to comply with the Securities Act. Right. And the SEC indemnity covers one specific action for the parent company of the initial borrower. So the second question that's before the Court is whether this guarantee is enforceable even if the Court believes that the borrower definition was not incorporated. And we contend that it is. And the reason is because the condition of liability that's described in the guarantee covers the act of a borrower placing the property or a part — or any part thereof into voluntary bankruptcy, which is precisely what happened here. And the only way that phrase, or any part thereof, can have any meaning is if it covers the act of something less than the totality of the borrowers. The reason this is is because up to 35 entities own an undivided interest. And the only way you could have a part of the property end up in bankruptcy is if one or two or 34, but something less than 35, of those entities file bankruptcy. That's the only way a part of a property can be in bankruptcy. And so the parties agreed to this condition. They meant for it to have some effect. The only way to give effect to that intent is to say that it covers the condition of a single borrower placing his undivided property interest into voluntary bankruptcy. And therefore, this guarantee is enforceable on its own terms, regardless of the incorporation. Was there — there was a sale and the property was foreclosed? Yes, Your Honor. Was there any attempt to prevent that before we got to this stage? I would think that the other investors might have tried to have prevented it to go that far but waited until there was a foreclosure in the sale and it came to this stage. Yes. Were they not interested in keeping their property and continuing with payments, I would assume? Why wasn't that done? My time is up. Can I answer your question? Thank you. The testimony from the loan witness at trial was that in this case, which is very common, these investors don't know one another. They've been sold through one or more syndicates, and they might reside in up to 20 different states. You mean each of these LLCs? Each of these LLCs. I assumed each of the LLCs was an individual investor. Individual or a couple, usually. Right. They often don't know one another, and they don't coordinate efforts. What happened in this case was one of them hired an advisor, which was known for aggressive tactics. This property was determined to be in some sort of distress, and this advisor advised a single LLC tick to file bankruptcy. Now, there was some correspondence back and forth, but I don't believe there was any coordination between the number 25 tick and the rest of them regarding whether it wanted to engage in the bankruptcy process or not. The other borrower entities, the other tick entities, did not engage that same advisor, so they weren't getting the same advice. So they were not aware of when this took place? I don't believe there's any evidence they were aware until the filing was made and they received the report that the bankruptcy was filed. Thank you. All right. You have time for rebuttal. Mr. Kent. Good morning, Your Honors. Adam Kent for NNN Realty Advisors. I'd like to address the Court's question about why the structure was used. Specifically, it was used pursuant to 1031 exchange, and the intent was to preserve a deferred gain in a like-kind exchange. And so the IRS allows for less than 35 people, individuals, or limited liability companies to collectively own a piece of property as a tenant in common. This is pursuant to Revenue Procedure 2002-22. It's not law, but it is a guidance from the IRS. Whatever. Okay. Thank you. So the issue presented is how Wachovia Bank and the appellee NNN Realty Advisors defined borrower in the guarantee agreement. Did those parties mean to incorporate the instructions of how the short reference term borrower was to be applied in the security agreement into the guarantee agreement? It's important to note that the appellant is not a party to either of the agreements or these negotiations. At trial, appellant failed to meet its burden to show that Wachovia and NNN Realty Advisors intended to incorporate the instructions for the short reference term. Well, your appellant is a co-owner of the property, right? Was. Wrong. What is appellant? NNN? Well, NNN Realty Advisors was the guarantor. But it had no equity interest in the property? Correct. None. Yeah, and that would lend itself to. But it was. Excuse me. Go ahead. That would lend itself to the understanding that the guarantor was guaranteeing collective acts of the investors. If you look at the tenants in common agreement, which is referenced in the security agreement, these investors were passive investors. They formed limited liability companies pursuant to the covenants in the security agreement, and they acted through a manager. Which was NNN or a sub of NNN or something. It was a sub of NNN Realty Advisors. Correct. And so NNN Realty Advisors had. Let me ask you a question. If you were going to buy 3% of a property that somebody else was managing and they had no skin in the game, would you do it if they weren't a guarantor? Just wondering. Yeah. A lot of times the guarantor did have skin in the game through a subsidiary in the beginning. So the way that these were structured. Right. I understand. I can understand that. Yeah. Okay. Well, let me just add, I mean, you know, keying off of what opposing counsel has said, your argument fundamentally rests on this one parenthetical, it seems to me. And what I've always learned is transactions like this, and under Texas law I think this is accurate, are to be construed holistically in terms of all the governing documents. The indemnity and guarantee agreement in the very next paragraph specifically incorporate and endorse and are dependent upon the other security instruments. So how can you divorce the guarantee from the others? Yes, Your Honor. So we'll start with the security agreement itself is much broader. And, in fact, what we're looking at is we're looking at an instruction of the application of the definition. So the instruction is collectively and individually as required. Right. And that doesn't appear in the guarantee itself. Now, if you look at the actual short reference, whereas the argument was that there is a stray parenthesis, in fact, I would argue that the stray parenthesis is after borrower because everywhere else in the document where as defined in security instrument appears, that is the encapsulated parenthetical. And building on that point, everywhere else in the guarantee agreement where that parenthetical as defined in the security instrument appears, the defined term comes before the parenthetical. So, for instance, Securities Act, as the court pointed out, that appears two pages following in paragraph J. Yeah, J. The Securities Act appears before the parenthetical. And that's true if you turn to – it's the record Bates numbered pages 1348. It's X. Sorry. It's six, but it goes for some pages where it says dissemination of information. Anyway, in that, the terms participants – sorry, participations, securities, an investor, and rating agency all appear before the parenthetical. So here in the recital, the actual term borrower appears after the parenthetical. And that will lend itself to looking at the way that those entities are referenced in the security instrument. The security instrument specifically sets out in section 1.1 – Well, how could – I guess my problem is if you construe borrower to necessarily incorporate the listed entities, then borrower does not include, according to your interpretation, any entities who came into the deal following the execution of this guarantee. Is that correct? It can't include NNN, Cypresswood, LLC 21 through 25, right? Well, I would say that that's incorrect. I think that the intent here wasn't to include all of the property owners. Well, the only way you include all of the property owners is by referring back to the loan and the security agreement that it is a moving target and that you can have people coming in and out. I would say that's correct, Your Honor. But I think that the instruction individually and collectively as applied that is referenced in the security instrument that specifically does not appear in the guarantee agreement – I understand, but what I'm saying is that you are interpreting the – from under the guarantee because there is practically no provision of this guarantee defining borrower that makes any sense in terms of – as I read the – and I did read this guarantee, the initial guarantee word for word – that makes sense if you only interpret borrower as, A, collective and, B, somehow defined solely by the identified entities 1 more or less 1 through 20. In other words, it's supposed to be a narrow guarantee. I don't understand what that means. I can explain that, Your Honor. All right. That's a point that was made. So let's – if you look at Section 4, the first event of default in Section 4 in the security agreement, in fact, is nonpayment of the loan payments. That is not – that's not a triggering event. That's not a triggering event under the guarantee. Right. Well, except for the fact – except this – I'm not sure about – I mean, if you say so, but I – Your Honor asked the question and I was sitting at the table. I did confirm that. That's not a triggering event under the guarantee. So if you look – if you look at Section 1 and we scan – But the loan – okay. Okay, fine. So the guarantee is structured to repay the – because none of these individual investors, there's not recourse against them. Correct, Your Honor. All right. So the loan is structured dependent upon the management talent of NNN and the ability of the property to generate sufficient income to pay off the loan, right? And the market in general. I would throw that as a factor. I mean, it's not – I mean, you can be as talented as you want if the market – if there are no tenants or – Right. Well, yes. Okay. So Your Honor was – But when you – when the gravamen of the guarantee is a borrower will do such and such and so and so, borrower's termination of the management agreement, managing member of – in addition to the foregoing, indemnitor shall be liable for all principal interest and other amounts which may be due and owing by borrower under the note. Borrower and – From and after. From and after. And then it specifically enumerates those factors. I understand that. But borrower only makes sense in that context if you're defining it in terms of the security agreement and not in terms of your limited construct here. Well, again, Your Honor, that goes back to the intent of this agreement was to include all of the property owners. But we're looking – I think we're equivocating between – Well, you've got to make a document – in other words, you have to interpret it to be consistent within itself. Well, Your Honor, the law is that if a guarantee – a guarantee should be strictly construed. If a guarantee is uncertain, that the terms go towards the guarantor, in favor of the guarantor. And so the guarantor here, because of the exercise of control, because of the structure of this investment, had control over the collective. Now, as my colleague pointed out, one investor runs off and files bankruptcy in breach of all the agreements. That's not something that the guarantor was willing to guarantee against because the guarantor does not have control. And now, as is here, the lender has foreclosed against the property. At the instance of the foreclosure, the lender foreclosed around 97 percent of the property. A couple months later, the bankruptcy, in fact, was dismissed. Now it got to 3 percent. And now – so the lender owns the entire property, and now it's coming after the guarantor for the entire balance under the loan. That's not something that the guarantor agreed to guarantee against. Well, then in that case, this indemnity should have set up to the amount of X. I don't follow, Your Honor, because – Well, you can always have a guarantee limited in dollar amount. You're saying this was a limited guarantee. Well, it is a limited guarantee in the events of default. And I want to continue the point – One of which is bankruptcy of borrowers. Well, I want to – well, it's borrower as defined in the collective. And I want to continue the point where you're pointing out in the in addition paragraph. I want to make it clear that it's after fully liable for all amounts due and owing under the security agreement, but after those specific events. So, again, I want to go back to the point. A simple nonpayment under the loan does not trigger the guarantee. They are specific, enumerated, collective events. And it's evident through the structure. The guarantor would not guarantee these individuals – up to 35 individuals scattered throughout the country that were meant to be passive investors. If we interpret borrower to mean all entities, and you look at all these documents as a whole, then aren't there clauses and portions of the guarantee that then don't seem to apply to anything or don't make sense? If you look at them as a one entity rather than separate groups, then there's parts of the guarantee that don't know where they fit. So I will point out one term that I think the court is referring to. Unless there's something else more specific, there was an argument that was raised about the term or any part thereof in reference to the guarantee. That was something that was argued in the trial court. The only witness supplied by the lender admitted that that was boilerplate language. The court, in its findings of fact, cited to that admission and said that that would not change the definition and application of the term borrower. And again here, if the guarantee is not clear, then the term is interpreted in favor of the guarantor. So what about there's reference to principals, officers, general partners, or members of the different entities. Can you have that if it's just one borrower? Or it says 1F refers to borrower or any of its principals, officers, general partners, or members. What's that referring to? Well, again, I would – an enrollment advisor would argue that that's boilerplate language. Again, because this was a passive investment, borrower itself didn't act. I mean only individual borrowers can file Chapter 11. I mean under the bankruptcy law. There's no provision under the bankruptcy law for a series of 25 LLCs to file bankruptcy collectively. Well, I've actually participated in a bankruptcy filed by all of the investors in similar structures like this. I don't know how the bankruptcy court did it. I guess nobody raised the question, but the definition of a debtor is I don't see that. A joint venture is an entity that can file. An LLC is an entity that can file. But I can't file with my brother, and I don't see how LLC1 and LLC2 can file together. Again, I've participated. It's 3,500 Maple. Where, in Houston? The property was located in Texas, yes. I don't know if it was Houston. Maybe that sounds like Dallas. 3,500 Maple. So it was a bankruptcy proceeding that had debtors, and it was all of the tenants. Well, unless – I mean it was probably one property. It was one property. But it could be. Yes, but one of my questions here was a property, when it says our other part thereof, a property can't file bankruptcy. Only people can file bankruptcy, and people or legal entities, and I would question the – obviously it was in people's mutual interest, so they thought to handle the proceeding collectively, and I'm not opining on whether a bankruptcy court could collectively handle 25 LLCs. But, I mean, that's absurd. What's absurd? The other situation, having a collective filing. So, in other words, it is not provided in the bankruptcy law. So your definition, the way you're defining borrower, is not something that's even within the bankruptcy law. Again, I don't know how it was done. I wish I had an answer to this question. Well, if you want to – I mean, I don't think the case turns on it, but I do think it's a powerful thing that if you – we construe a guarantee not to be nugatory, I assume, although – I would assume as well. I just – from my experience, I've participated in a bankruptcy proceeding. I don't know how it was done. Well, nobody raised it. But I don't – I also don't see, with Judge Prado's question, a borrower or property or any part thereof. You know, again, I don't see how you can just write out language in a guarantee and say that's boilerplate. Well, I think the court would – I mean, why don't you just say that this reference as defined in the security instrument is boilerplate because down in the very next paragraph, they clearly make the entirety of the indemnity dependent upon the interpretation of the loan documents collectively. Well, I think the court would admit that there is boilerplate language in contracts, and the – But boilerplate is still there. I mean, you still have to enforce it. Boilerplate is you'll pay the debt. Okay. Well, here the court found that – the trial court found that the boilerplate language did not change the application of this. Boilerplate, that's – what I'm saying is that's a pejorative with no legal significance. Don't you agree with that? I wouldn't agree with that. I would agree with the fact that boilerplate language does not change specifically defined terms. So boilerplate obviously has – it can have some effect. Or any part thereof. Most people would not think that or any part thereof is, quote, superfluous, if what you mean is superfluous. I do not mean that. All right. I meant that while it could have some impact at times, here it does not change the specific application of a defined term. And what do you – how do you respond to his argument that you can't use punctuation to overcome the otherwise pretty clear meaning of documents? Well, again, the argument is that the stray parenthesis is between instrument and the comma, the borrower. And I would, in fact, argue that if the court is going to consider the stray parenthesis argument, it would be the parenthesis after borrower. If you look at the document in general, the parenthetical is as defined in the security instrument throughout that document. So if there is any stray parenthesis, it comes after borrower, not instrument. All right. If there are no other questions, that's my time. Thank you. Thank you. Mr. Benalli, so? Thank you, Your Honor. May it please the Court. In his time before the Court, the appellee and the Court discussed many provisions of the guarantee, and the appellee's answer to most of the questions were either that it was boilerplate or that it was not a condition that the guarantor would have agreed to because it wouldn't have been able to control the outcome. And the example for that is they were not able to control this TIC-25 from filing bankruptcy. However, there is provisions, including the fraud and intentional misrepresentation clause that Judge Prado questioned about, found on page 1340 of the record. There is language in there that says that a fraud or misrepresentation by a member of the borrower would give rise to liability. And certainly a statement that is a misrepresentation by an individual member of a borrower is not something that the guarantor could control. These statements come out in their ordinary course and are not cleared by the guarantor, who by his own admission is not a part of this loan. It was not part of the loan structure except as to appear as a guarantor. Secondly, the term boilerplate is a term that the district court used. It is certainly not a term that the witness used. The witness conceded that he saw the language about property or any part thereof in many different loan documents. This is no surprise. He works for a loan servicer that deals with loans of this type of structure that contains similar language. Indeed, he testified at trial that the whole point of this structure of this market is to have loan documents that function the same, that are substantially similar in their terms. So, of course, his testimony was that not only that term but many of these terms are substantially similar loan to loan. That's not boilerplate that you would find in a consumer contract that you might give special scrutiny to. These are sophistication. Boilerplate is a pejorative. It's not a term of art. That's, you know, I reject that. The characterization of any provision here in boilerplate is not an excuse to not enforce. And lastly, Your Honor, there is specific references in the paragraph that starts in addition to the foregoing where the condition that we're relying on is found. There are specific references to borrower conduct under the security instrument, for instance, allowing an encumbrance to be made on the property without consent. Well, that's made under that definition. But the point, do you agree that the, quote, property could have filed by all of the LLCs filing a collective, some kind of collective bankruptcy? Apparently it happens, and apparently the courts permit it, but it seems pretty un- Doggone it. I mean, you know, I had some background in bankruptcy, and that is incomprehensible to me, that nobody raises, and it may be not to the best interests of either the borrowers or the lenders, but it is incomprehensible to me that bankruptcy courts would take cognizance of something that the statute does not define as a debtor. I would have to agree, Your Honor. Well, somebody better raise that because that's, you know, I don't know. I mean, it's just like when the bankruptcy courts have granted back when all these things, you know, a big realty company would file each of its apartment buildings as a separate LLC, and then the bankruptcy court would separate lenders in many cases, and then the bankruptcy court would issue a block stay over all of these separate entities, even though only one of them or two of them were actually insolvent and in bankruptcy. I mean, it's the same thing. It's what a judge in Harris County once called reach out and touch me jurisdiction. Well, even if it were permitted, the fact that it could happen means that they wouldn't never need the phrase or any part thereof as part of the triggering condition. The fact that maybe it's theoretically possible for all of them to file, it is certainly possible for something less than all of them to file, and that's why that phrase exists in the definition of property. Because each of them is an undivided owner in the property. Correct. Who often have no communication with the other borrower entities. And for these reasons, Your Honors, we ask that the court reverse and render judgment. Thank you.